Argued and submitted January 14, reversed and remanded May 14, 2008

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## DAVID MICHAEL OLSEN,
*Defendant-Appellant.*

Clatsop County Circuit Court
041330; A130391

185 P3d 467

George W. Kelly argued the cause and filed the brief for appellant.

Inge D. Wells, Senior Assistant Attorney General, argued the cause for respondent. On the brief were Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Anna M. Joyce, Assistant Attorney General.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

SCHUMAN, J.

## SCHUMAN, J.

Defendant appeals his conviction for sexual abuse in the first degree for an act alleged to have been committed between January 1, 2003 and August 30, 2004. He argues that, although the court properly admitted evidence that he had sexually abused a child in 1986, the court erred in admitting evidence that he had been convicted of that act. He also contends that the trial court erred in admitting hearsay statements made by the five-year-old victim, T, because the state did not comply with the statutory prerequisites to admissibility of such statements. We conclude that admitting the fact of defendant's prior conviction was not error, but that (as the state concedes) admitting the hearsay was and that, contrary to the state's contention, the error was not harmless. Accordingly, we reverse and remand.

The events leading to defendant's arrest, described more fully below, occurred during a period when T and her parents were living in defendant's house. On several occasions, T crawled into defendant's bed. Although he denied any intentional act of sexual touching, he was convicted on one count of sexual abuse in the first degree, ORS 163.427, for touching T's vagina.

■ Defendant's argument regarding evidence of his 1986 sexual abuse conviction requires little discussion.[1] Defendant argues that the fact of his conviction is not relevant under OEC 401, and that, even if it is relevant, it should have been excluded under OEC 403 because its prejudicial impact significantly outweighs its probative value. According to defendant, "[a]lthough the 1986 *incident* might demonstrate something about defendant's intent in 2003 (one could infer, for example, that he is sexually attracted to young girls), the fact of the *conviction* adds nothing to our information about his intent." (Emphases in original.) We disagree.

---

[1] We deal with this assignment of error at this point in the opinion in order to facilitate our determination of whether the erroneous admission of the hearsay evidence was harmless; that determination requires us to gauge the likelihood that the inadmissible evidence affected the verdict and that determination, in turn, requires us to consider the strength of the state's case based on all of the admissible evidence.

■ Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OEC 401. As defendant concedes, the 1986 sexual abuse incident is relevant. That incident and the incident in this case were quite similar: both involved young girls, eight and five years old respectively, who alleged that defendant touched them sexually underneath their clothes while they were next to him on a couch or bed and were covered by blankets or a coat. The fact that defendant was convicted of the 1986 incident is independently relevant because, as the state argues, that fact adds

> "something that mere claims by the victim that an incident occurred does not provide. Moreover, given that it is incumbent * * * upon the court to determine with certainty that the [earlier] crime was committed and that defendant was the perpetrator, there was no error in allowing the evidence by way of the conviction itself."

We also reject defendant's argument that, even if the conviction is relevant, it is inadmissible under OEC 403 because its probative value is significantly outweighed by its prejudicial value. OEC 404(4) provides that, "[i]n criminal actions, evidence of other crimes, wrongs or acts by the defendant is admissible if relevant except as otherwise provided by" the state or federal constitutions, or by statutes that do not apply in this case. In criminal cases, that rule precludes the balancing of probative value against, among other things, the danger of undue prejudice, which is normally required by OEC 403. *State v. Phillips*, 217 Or App 93, 98, 174 P3d 1032 (2007). Thus, the court did not err in admitting defendant's 1986 conviction.

■ The hearsay evidence presents a more difficult question. Defendant argues that the trial court erred in admitting several of T's hearsay statements, because the state did not notify defendant of the particulars of the statements as required by OEC 803(18a)(b). That statute provides generally for the admissibility of statements made by a person concerning an act of abuse, but it also provides that

> "[n]o statement may be admitted under this paragraph unless the proponent of the statement makes known to the

adverse party the proponent's intention to offer the statement and the particulars of the statement no later than 15 days before trial, except for good cause shown."

The notice that the state provided to defendant in this case did not provide any details about the evidence the state sought to admit. It simply stated that the state intended "to offer child hearsay evidence pursuant to OEC 803(18a) and (24) at the trial." Defendant objected that the notice was insufficient because "it fails to [list] the particular statement and/or which child we're talking about." The state concedes that the objection had merit and the trial court erred in admitting the evidence. We agree.

The state also contends, however, that admitting the evidence was harmless. If that is the case, we will not reverse the conviction; we will affirm a judgment despite evidentiary error if there is "little likelihood that the particular error affected the verdict[.]" *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). In determining whether an error is harmless, we focus on the "possible influence of the error on the verdict rendered." *Id.* To gauge that influence, we begin with a consideration of the evidence that was properly admitted.

In large part, that evidence consisted of conflicting accounts rendered by defendant and T. According to defendant, in July 2003, he agreed to allow A. C., S. C., and their three children to move into his home. During the four months that the Cs lived with defendant, he slept on a hide-a-bed in his living room, A. C. and S. C. slept in one bedroom, and the children slept in the other bedroom. Because the children's father did not spend much time with the children, defendant gave them considerable attention. Occasionally, T would awaken in the morning and crawl on top of the hide-a-bed; defendant, under the blanket, would be wearing shorts. On two occasions when this occurred, defendant experienced an erection. T, wearing a nightgown, would sometimes remain on top of the blanket and sometimes crawl under it. On these occasions, she would sometimes try to pull defendant's shorts down; she also did that when he would get up and walk toward the bathroom. On more than one occasion, she touched defendant's penis, despite his attempt to prevent that from happening. Once, T followed defendant into the

bathroom and "came in through the door while [defendant] was ejaculating." Although defendant never touched T's vagina while she was in the hide-a-bed, he admitted, in response to an interviewer's question, that there "might have been a time" that he touched her vagina while "picking her up."

T's testimony, given at trial two years after the alleged events, related the following account. Her description of the living arrangements matched defendant's. She related that defendant touched her in her "private place," more than once, underneath her nightgown. She also related that defendant showed her his "private parts" in the bathroom on one occasion, and that she observed "milk" coming out of it. Defendant made her promise not to tell anybody about these events. Because of these events, she did not enjoy living at defendant's house.

Additional admissible testimony established the following: First, in 1986, when he was 21, defendant, while lying under a blanket with an eight-year-old girl for whom he was babysitting, moved her hand to his penis and touched her vagina. On a separate occasion, he asked her to suck on his penis, which she did not do. For those acts, he was convicted of sexual abuse.

Second, although Dr. Little, the physician who performed a physical examination on T shortly after the events, did not discover any physical evidence that T had been abused, he diagnosed her as having been sexually abused based on his observation of her in an interview. *See* OEC 703; *Kahn v. Pony Express Courier Corp.*, 173 Or App 127, 152-53, 20 P3d 837 (2001) (expert's conclusion based on inadmissible hearsay is itself admissible).

Third, defendant presented evidence that the victim's mother, A. C., was angry at him because he reported to A. C.'s mother that A. C. had been arrested for driving under the influence of methamphetamine.

Fourth, T disclosed sexual abuse. The fact of the disclosure, apart from its contents, was admissible under OEC 803(18a)(a).

The foregoing facts are clearly sufficient to support a guilty verdict; from them, a reasonable juror could conclude beyond a reasonable doubt that defendant was guilty of touching T's vagina. That, however, is not our inquiry; our inquiry is whether there is little likelihood that the following, inadmissible, facts affected the verdict. *Davis*, 336 Or at 32. Put another way: Can we conclude that the foregoing facts present such convincing evidence of guilt that it is highly unlikely that there were wavering jurors who would have voted for acquittal but for the following, inadmissible, facts?

At the end of September, while T's mother, A. C., was drying T off after a bath, A. C. noticed T fondling her own vagina. A. C. moved T's hand away and said, "Why are you doing that? You've never seen mommy or daddy do that. You know, people don't do that." T responded, "Some people do." Her mother asked, "What do you mean?" T then disclosed that defendant had touched her.

Shortly after the disclosure, A. C. notified the police, and the C family moved out of defendant's home. After they moved out, T also made a spontaneous disclosure to her father, S. C. Without being questioned about it, T told her father that defendant had touched her "down there," and she pointed to her genital area.

The Cs then decided to take T to a child abuse evaluation clinic, the Lighthouse Assessment Center. There, T was first examined by Little, who discovered no physical evidence that T had been sexually abused. T was then interviewed by Bouton, a licensed clinical social worker, and the interview was videotaped. Little observed the interview through a one-way mirror, and Bouton periodically consulted with him during the interview. T disclosed to Bouton that defendant had touched her in a "private place," while she was on his bed and wearing her nightclothes. She did not remember if it had happened more than once. When Bouton showed T drawings of young girls and asked T where defendant had touched her, T pointed to the genital area.

Defendant maintains that, without the inadmissible hearsay, the case presents a credibility contest between him and T, and that the only persuasive evidence supporting T's version is her recollection, at the age of seven, of events that

transpired two years earlier. Even that testimony, defendant maintains, is sparse and vague; T referred only to being touched on her "private place." During the interval, defendant suggests, T was subject to the influence of several adults, at least one of whom had animus toward him. Without the evidence of T's contemporary account of events, he argues, including her demonstration to Bouton that she had been touched in her genital area, a reasonable juror could have entertained doubts that were resolved only by the inadmissible hearsay testimony corroborating T's in-court testimony of distant events and recounting the touching with specificity.

Defendant's argument is not without force. However, it underemphasizes some powerful inculpatory evidence that was properly admitted. Defendant himself admitted that he "might have" accidentally touched T's vagina while "picking her up"; the 1986 incident undercuts his assertion that the touching was accidental or against his will. Further, defendant acknowledged that, on more than one occasion, he and T were together under the covers on his hide-a-bed and that, at the time, he had an erection. The physician who examined T testified that, by virtue of his observation of T shortly after the events, he concluded that she had, in fact, been abused.

In the final analysis, we are persuaded that defendant has the better argument. We find it significant that, of the three counts that were submitted to the jury, defendant was found guilty only of one; the jury returned a verdict of not guilty on one count and could not reach a verdict on one count. From that outcome, we infer that at least some jurors were at least somewhat less than completely convinced that T's account of events was accurate or that defendant's account was inaccurate. That being the case, we cannot say that there is little likelihood that such jurors were persuaded by the powerful inculpatory hearsay testimony.

Reversed and remanded.