Argued and submitted April 1, 2008, affirmed February 11, 2009

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## WILLIAM S. SHREEVE,
*Defendant-Appellant.*

Klamath County Circuit Court
0101062CR; A124399

202 P3d 231

Michael Curtis argued the cause for appellant. With him on the briefs was Curtis & Correll, Attorneys at Law.

Susan G. Howe, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

ORTEGA, J.

ORTEGA, J.

Defendant appeals a judgment of conviction for first-degree assault, ORS 163.185, and three counts of first-degree criminal mistreatment, ORS 163.205, of his infant daughter, M. Defendant contends that the trial court erred in allowing the state to introduce evidence of uncharged misconduct toward R, his infant daughter from a prior relationship, some 17 years earlier.[1] We affirm.

Except as noted, defendant does not dispute the admissibility of the evidence showing the following facts. Defendant and Nelsen are the parents of M. They and Nelsen's other two children all lived together. Defendant and Nelsen were the only adults who provided care for M for the first eight weeks of her life, the time period at issue here.

Defendant was alone with M for short periods while Nelsen was otherwise occupied. Nelsen began to notice marks and bruises on M and would point most of them out to defendant. The injuries included a square mark of skin missing on M's hand; dark, triangular bruises on her arm; swelling on her head; a long, thin bruise on her bottom; and bruises on her face below her eyebrow and on her cheek. At one point, M held her leg in a way that suggested it was injured, and she cried almost nonstop for two days. M also threw up and sometimes blood came up.

Nelsen began to suspect that defendant was abusing M and became concerned about leaving M in his care. Despite her concerns, Nelsen did not call child protective services (CPS), because she had not actually seen defendant abuse M and was afraid that CPS would take her children from her. Instead, she began taking M with her when she went to her sons' school bus stop and having the children sleep with her in the bedroom, while defendant stayed in the living room.

When M was about seven weeks old, Nelsen decided to leave defendant as soon as she was financially able. Morgan, defendant's ex-wife, learned that Nelsen was planning to leave defendant, and she called Nelsen to ensure that her children and Nelsen's children could stay in touch.

---

[1] We reject defendant's other assignments of error without discussion.

During the call, Nelsen informed Morgan of her suspicion that defendant was abusing M. It is the admissibility of Morgan's testimony regarding that conversation that defendant challenges. Morgan testified that the conversation alarmed her because Nelsen's description of her concerns reminded Morgan of injuries that R, her daughter with defendant, had sustained while in defendant's care 17 years earlier. Morgan specifically asked if defendant had bitten M, because she had observed teeth marks on R's cheek after R had been in defendant's care. Morgan also was concerned when Nelsen told her that defendant had "staged" a fall in front of her while holding M. Once, while holding R, defendant had slipped and fallen in front of Morgan and then later asked Morgan to look at R's leg, which was swollen and appeared to be broken. Because of the similarity of the injuries sustained by R and M, Morgan encouraged Nelsen, during phone conversations the next morning, to report the injuries to CPS.

While Nelsen and Morgan were talking, Nelsen suddenly reported that defendant had returned home and that she did not know if she would be able to leave or call for assistance while he was present. Concerned, Morgan called CPS and reported Nelsen's concerns regarding M. Morgan also related her suspicion that defendant had injured R years earlier. CPS workers and state troopers went to the home shared by Nelsen and defendant in order to investigate. They helped Nelsen and her three children move out; they were already packed and ready to go.

The following day, Nelsen took M to a hospital to be examined. X-rays revealed that M had sustained rib fractures that were approximately one week old, skull fractures of undetermined age, and a corner fracture on the top of her tibia, the large bone between the knee and ankle. The examining physician concluded that, although a skull fracture in a child as young as M can be the result of an accident, such as dropping the child, the other injuries are uncommon in a child that young and are very unlikely to occur except as the result of intentional infliction. Accordingly, the doctor diagnosed M with shaken baby syndrome. He concluded that her skull fractures were caused by blunt trauma inflicted with "significant force" beyond what a hand could cause; rather,

her head must have been forcefully struck against a hard object such as a wall, chair, or table. M's head injuries were "pretty serious" and "life-threatening."

Defendant was charged with one count of first-degree assault, two counts of second-degree assault, and three counts of first-degree criminal mistreatment. Following a jury trial, he was convicted of one count of first-degree assault for the skull fractures and three counts of first-degree criminal mistreatment for the skull fractures, the broken ribs, and the fractured leg.

On appeal, defendant argues that, for two reasons, the trial court erred in admitting Morgan's testimony concerning R's injuries. First, he contends that the evidence, admitted to explain why M's injuries were reported, was not relevant under OEC 401. He argues that, because the reason that M's injuries were reported was not an element of any of the charges, it was not a fact of consequence; it was undisputed that M's injuries merited investigation. Second, defendant contends that, even if relevant, the evidence should have been excluded under OEC 403, which provides that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice," among other reasons.[2] The evidence, defendant asserts, suggested that the jury could decide the case on an improper basis: that defendant was a bad person with a character for assaulting infants and should be punished because he had escaped punishment for a previous similar incident.

For context, some discussion of the procedural background of this case is in order. Before calling its witnesses at trial, the state sought permission to question Morgan about

---

[2] The test set out in *State v. Johnson*, 313 Or 189, 195, 832 P2d 443 (1992), for admission of evidence of uncharged misconduct under OEC 404(3) requires that (1) the evidence is relevant for a noncharacter purpose, (2) the proponent offers sufficient proof that the misconduct occurred and that the defendant committed it, and (3) the evidence's probative value is not substantially outweighed by the danger of unfair prejudice. Defendant did not clearly dispute the second factor in the trial court, but now makes the bare statement that the evidence "derives from incidents which are extremely remote in time, and have never been subjected to orderly fact-finding independent of this case." Even assuming that his argument on that issue was preserved below, it is insufficiently developed on appeal to merit discussion.

R's injuries. The state explained that it intended to elicit testimony from Morgan that the conversation with Nelsen about M's injuries triggered Morgan's memories about R's injuries, caused Morgan concern about M's well-being, and resulted in Morgan's report of the suspected abuse. The state further explained that it would be offering the evidence regarding R "for something other than to prove conformance with that action at this time" and that the evidence "goes towards [Morgan's] credibility and building that credibility * * * and shows a lack of bias on her part."

Defendant responded that the evidence was too remote in time and too prejudicial. He contended that "the obvious implication that the State wants to argue is that [defendant] fractured [R's] bones, therefore, he fractured this child's bones and I think that's the only reason for putting [it] in." He further contended that "the State is trying to boot strap an uncharged crime that [defendant] has never been arrested for into proving that he is guilty of this crime and it's completely improper under [*State v. Johns*, 301 Or 535, 725 P2d 312 (1986),] and under the evidentiary code."

The court explained that it would allow the evidence concerning what Morgan had observed with R and the similarities between that and what happened to M. It ruled that the evidence was admissible under OEC 404(3) for the limited purpose of helping to explain "why the current child's injuries were reported" and also why Nelsen "may not have made a report that she should have."[3] When, at trial, the state offered Morgan's testimony, defendant offered no new basis for objection.

■ On appeal, the initial question is whether Morgan's testimony was relevant for a noncharacter purpose. Under OEC 401, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Under OEC 404(3), however, evidence of prior bad acts is inadmissible "when the evidence

---

[3] The jury was instructed, concerning the evidence of R's injuries, "that you may not use this as evidence that the defendant injured [M]. You may only use it to help you understand why the complaint of abuse was made to the authorities."

is offered solely to prove (1) the character of a person, and (2) that the person acted in conformity therewith." *Johns*, 301 Or at 548. OEC 404(3) allows admission of prior bad acts evidence "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." The rule is one of inclusion and, as such, allows "resort to any theory of logical relevance when ruling on 'prior crime' evidence that does not run afoul of the 'propensity to commit crimes or other acts' prohibition." *Johns*, 301 Or at 548.

■　　As noted, defendant contends that Morgan's testimony was not relevant under OEC 401 because it did not make more or less probable "the existence of any fact *that is of consequence* to the determination of the action." (Emphasis added.) The state responds that the evidence is relevant because it bolstered the credibility of two of the state's witnesses, Morgan and Nelsen, and their testimony was pivotal in proving that defendant, not Nelsen, was the person who injured M. We agree with the state.

■　　Evidence that may not be material to the substantive elements involved in a criminal charge is still relevant "if it tends to establish a *material fact* in the case." *State v. Hampton*, 317 Or 251, 256, 855 P2d 621 (1993) (internal quotation marks and citation omitted; emphasis in original). Thus, in *State v. Stevens*, 328 Or 116, 119, 124-27, 970 P2d 215 (1998), the court concluded that evidence of the defendant's abuse of his girlfriend was admissible in his trial for the murder of the girlfriend's 18-month-old daughter because the evidence helped to explain the girlfriend's conduct in not seeing or reporting signs of abuse of the daughter. The explanation was important because the defendant had attempted to persuade the jury that his girlfriend's conduct supported his theory that she, not he, was the murderer.

　　Here, likewise, Morgan's testimony helped to establish a material fact in the state's case. Because the state had no direct evidence that defendant had injured M, its case was based on circumstantial evidence: (1) medical testimony that M's injuries most likely resulted from physical abuse, not accidents, and (2) Nelsen's testimony that she was not the

abuser. If the jury believed Nelsen's testimony, it could infer that defendant, the only other person with whom M was left alone, had caused her injuries.

Defendant's case consisted of casting doubt on Nelsen's veracity and attempting to persuade the jury that, if abuse in fact occurred, Nelsen was the likely culprit. In opening argument, defendant told the jury that the evidence would provide a basis for finding that Nelsen had abused M. That evidence consisted of her history of psychiatric problems, including anger management issues, and her failure to report suspected abuse, despite weeks of observing symptoms.

In order to prevail, the state had to persuade the jury to reject defendant's theory. Critical to its strategy was the jury's acceptance of Nelsen's explanation for not reporting the abuse of M—that Nelsen had not actually witnessed defendant injuring M and was afraid that, if she reported her suspicions, authorities would simply remove M and her other children from the home. Nelsen's credibility was thus central to the state's case against defendant.

Morgan's testimony bolstered Nelsen's credibility and negated defendant's proposed basis for inferring that Nelsen was M's abuser. First, it showed that Nelsen, although reluctant to report suspected abuse before speaking with Morgan, was prepared to report her suspicions after that conversation because additional information from Morgan suggested to Nelsen that M had been abused. That Nelsen was then prepared to report, and failed to do so only because defendant returned home, supported her testimony concerning her lack of an earlier report. Second, other testimony by Morgan, to which defendant did not object, helped to explain why Nelsen did not call CPS—because defendant had just come home, and Nelsen was afraid that she would not be able to call with him present.

Morgan's testimony bolstered Nelsen's credibility, but only if the jury believed Morgan. Accordingly, Morgan's credibility also was at issue. With no explanation for her having called to report abuse, the possibility existed that defendant would argue, and the jury might find, that, as

defendant's ex-wife, she was bent on causing trouble for her ex-husband.[4] Morgan's testimony concerning the similarities between the injuries that M received and those that R had received years earlier, coupled with her knowledge that Nelsen was unable to call the authorities, provided a different explanation for why she made the report of abuse.

Morgan's testimony thus bolstered her own credibility, which was important in order for her testimony also to support Nelsen's credibility. Nelsen's credibility both in general and specifically in reference to her reasons for not reporting her suspicion that M had been abused was material to the state's case against defendant. Because Morgan's testimony supported Nelsen's credibility, and Nelsen's credibility was material to the state's case, Morgan's testimony was relevant.

Defendant also argues that, even if relevant, Morgan's testimony concerning R's injuries should have been excluded under OEC 403 because the prejudicial effect of the testimony substantially outweighed its probative value. Defendant's argument, however, ignores OEC 404(4), which provides that, "[i]n criminal actions, evidence of other crimes, wrongs or acts by the defendant is admissible if relevant except as otherwise provided by" other provisions of the evidence code or the federal or state constitutions. OEC 404(4) precludes the balancing, normally required by OEC 403, of probative value against the danger of unfair prejudice. *State v. Olsen*, 220 Or App 85, 88, 185 P3d 467 (2008); *State v. Phillips*, 217 Or App 93, 98, 174 P3d 1032 (2007), *rev den*, 345 Or 159 (2008). Defendant does not contend that admission of the evidence at issue violated other provisions of the evidence code or any provisions of the state or federal constitution.

---

[4] Defendant does not contend that the state was precluded from offering Morgan's testimony in its case-in-chief because the testimony was rehabilitative in nature prior to any impeachment. That argument likely would be unavailing, given defendant's announced intention to attack Nelsen's credibility. *See State v. Galloway*, 161 Or App 536, 540-41, 984 P2d 934 (1999), *rev den*, 330 Or 331 (2000) (for the party with the burden of proof to address in its case-in-chief "inherent weaknesses in its proof" is not a matter of rehabilitating a witness, but "of explaining the circumstances fully so that the trier of fact is not left with uncertainties that might otherwise detract from the strength of the party's case").

Accordingly, we reject defendant's challenge to the admissibility of Morgan's testimony.

Affirmed.