Argued and submitted July 28, reversed and remanded October 26, 2011

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## DAVID MICHAEL OLSEN,
*Defendant-Appellant.*

Clatsop County Circuit Court
081396; A142520

265 P3d 71

Laura A. Frikert, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Andrew M. Lavin, Assistant Attorney General, argued the cause for respondent. With him on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Sercombe, Judge.

HASELTON, P. J.

## HASELTON, P. J.

Defendant appeals a judgment of conviction for first-degree sexual abuse. ORS 163.427. On appeal, defendant contends, *inter alia*, that (1) the trial court erred in denying his motion to dismiss the indictment in this case because it violated the double jeopardy provisions of the state and federal constitutions and (2) under *State v. Southard*, 347 Or 127, 218 P3d 104 (2009), the trial court erred in admitting a physician's expert diagnosis, in the absence of physical evidence, that complainant had been sexually abused. We reject defendant's first contention without discussion. However, with regard to the second, we conclude that the trial court erred in admitting the expert's diagnosis; further, we cannot say that there was "little likelihood" that the erroneously admitted evidence affected the jury's verdict. *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). Accordingly, we reverse and remand.[1]

The evolution of this case is quite complicated. Defendant was indicted in Case Number 04-1330 on 22 counts of first-degree sexual abuse that allegedly occurred between January 1, 2003 and August 30, 2004. Those counts concerned three children whose family lived in defendant's house—*viz.*, complainant, who was approximately five or six years old at the time of the alleged conduct, and her two siblings.

At defendant's initial trial in 2005, the trial court granted defendant's motion for judgment of acquittal and dismissed 19 of those counts. Ultimately, the jury considered three counts—that is, Counts 13 and 14, which alleged that defendant subjected complainant to sexual contact by touching her vagina, and Count 1, which alleged that defendant subjected complainant to sexual contact by causing her to touch his penis. During the course of the trial, complainant was asked whether she had touched defendant's penis. She responded negatively. The jury returned a guilty verdict on

---

[1] Our disposition in that regard obviates the need to address defendant's remaining assignments of error concerning the trial court's admission of other evidence in the case as well as the court's denial of his motion for a continuance as a sanction for the state's discovery violation and his motion to exclude complainant's testimony about defendant's alleged conduct as a sanction for that violation.

Count 13 and a not guilty verdict on Count 14 but was unable to return a verdict on Count 1.

Defendant appealed. *State v. Olsen*, 220 Or App 85, 185 P3d 467 (2008). On appeal, the state conceded that it had not complied with the statutory prerequisites for admitting complainant's hearsay statements. *Id.* at 89. We accepted that concession and concluded that admitting the hearsay was not harmless. *Id.* at 87, 89-92. Accordingly, we reversed defendant's conviction and remanded the case to the trial court. *Id.* at 87.

Following our remand, the state filed a new indictment against defendant designated as Case Number 08-1396, and the trial court, on the state's motion, dismissed Case Number 04-1330. The new indictment in Case Number 08-1396 alleged two counts of first-degree sexual abuse that were identical to Counts 1 and 13 in Case Number 04-1330. Specifically, Count 1 of the new indictment alleged that defendant subjected complainant to sexual contact by causing her to touch his penis, and Count 2 alleged that defendant subjected complainant to sexual contact by touching her vagina. Before trial, the court dismissed Count 2 for reasons immaterial to our analysis of defendant's *Southard*-based challenge, and defendant proceeded to a jury trial on Count 1.

During its case-in-chief, complainant's mother testified about complainant's disclosure that defendant had touched her. Additionally, the state offered evidence that defendant had been previously convicted of sexual abuse based on an incident in 1986 in which defendant put the hand of an eight-year-old girl on his penis. Further, the state played for the jury a recording of defendant's interview with an Oregon State Police detective in 2004. In that interview, defendant stated that complainant had followed him to the bathroom and grabbed his penis as he was trying to pull up his pants and had touched his penis on other occasions. However, defendant denied that he had ever grabbed complainant's hand and put it on his penis.

In light of defendant's statements, the state's case turned on complainant's testimony about defendant's alleged conduct. Complainant testified that she sometimes slept in the same bed as defendant and that defendant touched her

"private" on numerous occasions. Specifically, with regard to the alleged conduct, complainant testified that, on one occasion, defendant, who was naked and ejaculating, called her to the bathroom and "grabbed [her] hand and touched—made [her] touch" his penis. However, complainant acknowledged that her testimony in that regard was inconsistent with her earlier statements to the clinical social worker who investigated her allegations in 2003 and with her prior sworn testimony in which she had denied that she had touched defendant's penis. According to complainant, she had been not been truthful in her earlier statements because she was "nervous and scared."

The state offered no eyewitness testimony or forensic evidence to corroborate the alleged abuse. Instead, over defendant's objection, the state offered the testimony of Dr. Roy Little, the physician who examined complainant following her disclosure of the alleged abuse.[2] Little testified that the purpose of examining and interviewing a child who has disclosed abuse, is "to find out what happened to the child, in other words, to establish—either validate or disprove the allegation, the disclosures that brought the child to our facility. We're trying to make a medical diagnosis." In this case, although, as Little acknowledged, "there were no physical findings specific to the abuse allegations that [complainant] made," Little diagnosed complainant with sexual abuse. According to Little, that diagnosis was predicated on what complainant's mother told him as well as complainant's statements during the interview, which were, he testified, "consistent, clear, and responsive, appropriate for her age and condition." Little testified that, even if complainant had lied during the interview about touching defendant's penis, he would not change his diagnosis of sexual abuse.

With the evidence so developed, the pivotal issue at trial was complainant's credibility, especially in light of her inconsistent statements about touching defendant's penis. Accordingly, the state's closing argument focused substantially on that question. In particular, the prosecutor explained why it was understandable for complainant to

---

[2] Before trial defendant moved to exclude Little's diagnosis. The trial court denied defendant's motion.

have lied in her earlier statements and urged the jury to credit complainant's testimony that defendant had caused her to touch his penis. Further, to buttress complainant's credibility, the prosecutor asked the jury to consider other evidence that the alleged conduct occurred in this case including "the medical diagnosis of Dr. Roy Little that [complainant] was sexually abused."

The jury found defendant guilty. Defendant appeals the resulting judgment.

On appeal, defendant contends that, under *Southard,* the trial court erred in admitting Little's diagnosis of sexual abuse in the absence of physical evidence. Further, defendant contends that the admission of that evidence was not harmless because "[complainant's] allegations of abuse were unsubstantiated by physical evidence or eyewitness testimony" and "[t]he erroneously admitted scientific evidence directly bolstered * * * [complainant's] credibility," on which the state's case "hinged."

In response, the state concedes that the trial court erred in admitting Little's diagnosis. However, the state contends that the admission of that evidence was harmless because "the victim's credibility was not an important issue during defendant's second trial because defendant admitted the facts from the victim's testimony" and, consequently, "the diagnosis played an insignificant role in defendant's prosecution in light of the other overwhelming evidence of his guilt." Specifically, according to the state, "[t]hat evidence included *defendant's admission* that the victim touched his erect penis * * *." (Emphasis added.)

The state's concession of error is well founded, and we accept it. Under *Southard,* which the Supreme Court issued approximately five months after the trial in this case, the court erred in admitting Little's diagnosis of sexual abuse in the absence of physical findings. *See Southard,* 347 Or at 142 (holding that, generally, a diagnosis of sexual abuse in the absence of physical evidence of abuse is not admissible under OEC 403). Accordingly, our inquiry reduces to whether the erroneous admission of that evidence was harmless.

In *Davis*, the Supreme Court explained the proper inquiry under Article VII (Amended), section 3, of the Oregon Constitution:[3]

> "Oregon's constitutional test for affirmance despite error consists of a single inquiry: Is there little likelihood that the particular error affected the verdict? The correct focus of the inquiry regarding affirmance despite error is on the possible influence of the error on the verdict rendered, not whether this court, sitting as a factfinder, would regard the evidence of guilt as substantial and compelling."

336 Or at 32. Further, in *State v. Perkins*, 221 Or App 136, 143, 188 P3d 482 (2008), we explained that

> "a variety of considerations may properly inform that single inquiry, including the nature of the error that occurred below, and the context of the legal error. The court [in *Davis*] noted, for example, that the erroneous exclusion or admission of evidence would be harmless if the particular issue to which the error pertains has no relationship to the jury's determination of its verdict or if the jury would have regarded the * * * evidence as duplicative or unhelpful to its deliberations. Ultimately, the Supreme Court in *Davis* concluded that the erroneous exclusion was not harmless, because it could not say that the excluded statements were merely cumulative of admitted evidence—and, indeed, were qualitatively different than the evidence that the jury heard—and because the excluded evidence goes directly to the heart of defendant's factual theory of the case."

(Internal quotation marks and citations omitted; omission in *Perkins*.)

This case turned on the jury's determination of complainant's credibility. Although the state offered evidence that, in 1986, defendant had caused another young girl to touch his penis, the court instructed the jury that it could not consider the "prior incident as evidence that the defendant is guilty of sexual abuse in this case" but could consider the evidence only as "evidence of defendant's sexual intent or

---

[3] Article VII (Amended), section 3, provides, in part:

"If the supreme court shall be of opinion, after consideration of all the matters thus submitted, that the judgment of the court appealed from was such as should have been rendered in the case, such judgment shall be affirmed, notwithstanding any error committed during the trial[.]"

absence of mistake or accident." Similarly, the jury was instructed that it could consider the evidence of uncharged sexual contacts between complainant and defendant only "as evidence of the sexual predisposition defendant had for this particular victim."

Thus, the lynchpin of the state's case was complainant's testimony that, on one occasion, defendant, who was naked and ejaculating, called her to the bathroom and "grabbed [her] hand and touched—made [her] touch" his penis. Although defendant admitted that complainant had touched his penis, he did *not* state or "admit" that he caused complainant to come to the bathroom and touch his penis. Thus, defendant's statements during the police interview do not "admit" the conduct to which complainant testified at trial and for which he was convicted. In sum, the state's "overwhelming evidence" proposition rests on an admission that never occurred. *Cf. State v. Pickett*, 246 Or App 62, 264 P3d 209 (2011) (declining to exercise our discretion to correct plainly erroneous admission of a diagnosis of sexual abuse where the defendant provided an extensively detailed admission of the abuse, which was uncontroverted at trial and consistent with the victim's account).

Given that circumstance, the admission of Little's diagnosis—which, again, the prosecutor explicitly invoked to bolster complainant's credibility—cannot be deemed harmless. We cannot say that there was little likelihood that the erroneously admitted evidence affected the jury's verdict. Accordingly, the error was not harmless, and defendant's convictions must be reversed.

Reversed and remanded.