## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## PHILIP LELAND RILEY,
*Defendant-Appellant.*

Washington County Circuit Court
C082793CR; A146201

308 P3d 1080

Ryan T. O'Connor, Senior Deputy Public Defender, argued
the cause for appellant. With him on the brief was Peter
Gartlan, Chief Defender, Office of Public Defense Services.

Matthew J. Lysne, Assistant Attorney-in-Charge, argued
the cause for respondent. On the brief were John R. Kroger,
Attorney General, Anna M. Joyce, Solicitor General, and
Pamela J. Walsh, Assistant Attorney General.

Before Ortega, Presiding Judge, and Haselton, Chief Judge, and Sercombe, Judge.

SERCOMBE, J.

**SERCOMBE, J.**

Following a jury trial, defendant was convicted of one count of sodomy in the first degree, ORS 163.405, and two counts of sexual abuse in the first degree, ORS 163.427. On appeal, he raises four assignments of error, the last of which we reject without discussion. Defendant first assigns error to the trial court's admission of certain hearsay statements made by the victim, arguing that the state's notice of its intent to offer those statements was insufficient under OEC 803(18a)(b), which provides an exception to the general rule excluding hearsay, OEC 802. In his second and third assignments of error, defendant contends that the court erred in admitting a letter that defendant wrote to his wife while awaiting trial and in requiring that defendant's wife testify. The court ruled that the otherwise-applicable husband-wife privilege, OEC 505, was abrogated in this case by ORS 419B.040(1)—a statute that prohibits the use of that privilege "in any judicial proceeding resulting from a report made pursuant to ORS 419B.010 to 419B.050." As to defendant's first assignment of error, we conclude that the state's notice was sufficient under OEC 803(18a)(b) and that the court therefore did not err in admitting the hearsay statements. As to defendant's second and third assignments of error, we conclude that defendant failed to object to the admission of the letter at trial—thereby failing to preserve that issue for our review—and that any error in requiring defendant's wife to testify was harmless. Accordingly, we affirm.

Defendant was charged with multiple crimes after the victim, a nine-year-old boy, alleged that defendant had sexually assaulted him in a YMCA locker room. At the YMCA, and over the days that followed, the victim made statements concerning the alleged sexual assault to various persons, including his mother, a YMCA patron, a YMCA employee, and several police officers. Those persons testified at trial as to the victim's hearsay statements. The victim also described the alleged sexual assault in detail during a DVD-recorded interview at CARES;[1] that DVD was played at trial.

---

[1] CARES is a regional child abuse assessment center for the northern region of the state. The acronym CARES originally stood for "Child Abuse Response and Evaluation Services." *State v. Norby*, 218 Or App 609, 612, 612 n 1, 180 P3d 752 (2008).

Before trial, the state notified defendant that it intended to offer the victim's hearsay statements pursuant to OEC 803(18a)(b). Under that rule, a party may offer "statement[s] made by a person concerning an act of abuse" if, among other things, "the proponent of the statement makes known to the adverse party the proponent's intention to offer the statement and the *particulars of the statement* no later than 15 days before trial, except for good cause shown." (Emphasis added.) "[T]he rule's requirement that the proponent identify the particulars of the statement requires at a minimum that the state identify in its notice the *substance of the statement* sought to be introduced and also identify the *witness or the means by which the statement would be introduced.*" *State v. Chase*, 240 Or App 541, 546-47, 248 P3d 432 (2011) (emphases added).

Here, the state's notice provided that the relevant statements were contained within (1) "[a]ll previously provided discovery in this case"; (2) "[a]ll documents received by the parties pursuant to court authorized pre-trial subpoenas"; and (3) "[t]he video recording of the CARES interview." It also referred to an attached affidavit:

"The foregoing and subsequent items and documents contain the particulars of statements made by [the victim] that the State intends to offer[:]

"a.   Statement(s) made orally and in the form of drawings on November 15th, 2008 while at or immediately outside of the Beaverton YMCA, referenced (among other potential places) on discovery pages[] 4, 5, 11, 12, 16, 17, and 34;

"b.   Statement(s) made on November 15th-16th, 2008 at Legacy Emanuel Hospital referenced (among other potential places) in Legacy Emanuel Hospital records previously subpoenaed to court and on discovery page 18;

"c.   Statements made on November 18th, 2008 at the CARES Northwest program referenced (among other potential places) on discovery pages 80-91 and on the recorded (DVD) interview previously made available to the defense;

"d.   Statement(s) made on November 18th, 2008 to Detective Andler after the November 18th, 2008 CARES interview referenced (among other potential places) on discovery page 5b."

Notably, the affidavit also provided that the victim was "available and expected to testify at defendant's trial."

Defendant moved to exclude the victim's hearsay statements on the ground that the state's notice did not identify the "particulars of the statement[s]" as required by OEC 803(18a)(b):

> "The affidavit just outlines that there was a CARES video available to the defense. *** And then several specific pages that the State indicated had statements on them. *** I've copied the pages that the State refers to in their notice and it's, you know, several—it's probably 30 or 40 pages thick. And as it stands now unless we go through— the notice is insufficient it's almost like giving us discovery [and] saying, 'Well, parse through it and figure it out.' And I think that's not proper notice under [OEC] 803(18a)(b), the particulars of the statement actually have to be in the notice. It can't just be referred to somewhere else."

In response, the state argued that its notice was sufficient:

> "I guess what we could do is we could photocopy the police reports and highlight them for defense counsel or we could have a secretary or have myself sit down and retype what's in the police report into the notice. But that seems to be a needlessly useless step, when we in fact have—there's nearly 300 pages of discovery here *** we focus on particular pages and we've apprised defense counsel to look at this particular page for where the statement is contained, you will find the statement on this particular page, or you will find it on the CARES tape, or you'll find it in the CARES report. So the notice has been complied with."

The trial court concluded that the state's notice was insufficient as to statements contained within the hospital records and the CARES report (discovery pages 81-90) but sufficient as to the rest of the statements:

> "All right, so the question is whether or not there is sufficient particularity. To the extent that the State has notified the defense that we are intending on offering those statements found on a particular page, that's sufficient particularity, as far as I'm concerned. I do not believe they have to identify this particular statement on this particular *** paragraph. Given that they have identified by page number in discovery that's sufficient particularity. ***

"Now, with the DVD I don't have a concern about that because it's not—again, it's not as though you have to sift through the DVD to find the child's statements. All of the statements on the DVD are only by the child. So I'm not really concerned about the DVD itself. Reference to the report regarding the DVD and the reference to the hospital records I don't think were of sufficient particularity for purposes of [OEC] 803(18a)(b). The state is not offering the report from the DVD examiner interviewer. So that question becomes moot.

"So the only question is what about the hospital report itself. Again, I think that you need to point to a particular statement on a particular page. You can't just say we're offering statements found within a hospital report. That isn't of sufficient particularity without knowing where that particular statement is to be located. However, [the] hospital records are going to be admissible in any event, they are."

On appeal, defendant largely reiterates his argument before the trial court. Specifically, he argues that the state's notice failed to identify the particulars of the statements that the state sought to introduce—that is, the substance of the statements and the witnesses or other means by which they would be introduced—as required by OEC 803(18a)(b).[2] The state responds that its notice was sufficient under the rule and that, accordingly, the court did not err in admitting the victim's hearsay statements.

We review a trial court's determination that the state's notice complied with OEC 803(18a)(b) for errors of law.

---

[2] Defendant additionally argues that the "deficiencies in the state's notice were compounded by the broad qualifier inserted into each paragraph in the affidavit, stating that [the victim's] statements could be found in the places listed in the paragraph 'among other potential places.'" In defendant's view, "[t]hat qualifier further obscured *how* the state would offer [the victim's] statements into evidence" because "the state could have intended to offer the statements in the form in which they appear in that location or through a potential witness mentioned in that unidentified location." (Emphasis in original.) However, as the state correctly points out, in ruling that a party "need[s] to point to a particular statement on a particular page," the trial court implicitly ruled that the state's references to "other potential places" did not provide sufficient notice under OEC 803(18a)(b). That is, the court ruled that any statements not contained within the designated pages of discovery and the DVD were not properly noticed and therefore not admissible under the rule. Defendant does not point to any place in the record where the court admitted hearsay statements made by the victim that were not contained within the designated pages of discovery or the DVD. Accordingly, we reject defendant's argument as to the phrase "other potential places" without further discussion.

*Chase*, 240 Or App at 546. As noted, to comply with that rule, the notice must identify "the substance of the statement sought to be introduced and also identify the witness or the means by which the statement would be introduced." *Id.* at 547. Merely providing discovery and notifying a defendant that the state intends to introduce any statements contained within that discovery is not sufficient. *Id.* at 546. The notice is not, however, required to set forth the statements verbatim. *Id.*

In *Chase*, the state provided the defendant with written notice stating that, in reference to 53 pages of discovery, "[t]he foregoing and subsequent reports contain particulars of statements made by [the victim] that the State intends to offer." *Id.* at 544 (internal quotation marks omitted; brackets in original). The defendant moved to exclude the statements, arguing that the notice was insufficient because it merely referred to the discovery and did not identify particular statements. In the defendant's view, the notice impermissibly required the defendant "to sort through 53 pages * * * to determine what statements in particular the state is wanting to enter." *Id.* at 545 (internal quotation marks omitted; omission in original). The trial court ruled that the state's notice was sufficient and admitted the statements. *Id.* On appeal, we reversed:

> "In *State v. Leahy*, 190 Or App 147, 151, 78 P3d 132 (2003), we said that merely providing discovery of statements or furnishing a list of witnesses does not comply with the literal requirements of OEC 803(18a)(b). Here, the state is correct that it did more than merely provide discovery, but not much more—it also notified defendant that it intended to offer hearsay statements contained in the discovery, but did not identify specifically which statements it would offer. * * * There were multiple hearsay statements in the 53 pages of discovery. It was not sufficient for the state to notify defendant of its intention to potentially offer any of those statements."

*Id.* at 546; *see also State v. Bradley*, 253 Or App 277, 283, 290 P3d 827 (2012) (concluding that "[t]he notice requirement is not satisfied merely by providing copies of reports and stating * * * that they 'contain the particulars of statements

made by [the victim] that the state intends to offer,' and that 'referenced statements concern an act or acts of abuse'").

Similarly, in *State v. Edblom*, 257 Or App 22, 303 P3d 1001 (2013), we considered whether the following notice was sufficient under OEC 803(18a)(b):

> "'Pursuant to ORS 40.460(18)(b), notice is hereby given that the State intends to offer hearsay statements of the victim regarding the nature of the criminal acts committed by the defendant upon the victim. Said statements are contained in substance in *any* law enforcement investigative reports, social service agency reports, school records, and video and audio tapes and other items which *have been and will be discovered in this case.*
>
> "'The State intends to offer all of the victim statements regarding the defendant's criminal acts.'"

*Id.* at 24 (emphases added).

Before the trial court, the defendant objected generally to the sufficiency of the state's designation of the "particulars" of the statements under OEC 803(18a)(b), emphasizing that the notice did not provide sufficient specificity regarding the witnesses or means by which the statements would be introduced. *Id.* at 25. Additionally, he argued that, "although the notice referred to school records and video and audio tapes, he had not received any such items in discovery" and, accordingly, "the state could not give a 'general notice covering all possibilities [and] thereby avoid the rule requiring 15-day notice' because 'if [that] were the case, the [s]tate could just avoid any notice requirement by providing * * * the discovery at the last minute.'" *Id.* at 24 (brackets in *Edblom*). The state responded that "the general language of its written notice was sufficient to allow it to introduce any hearsay statements that it provided to [the] defendant in discovery, before or after it provided the notice." *Id.* at 25.

Ultimately, the trial court concluded that the discovery satisfied the notice requirement of OEC 803(18a)(b). *Id.* at 27. The trial court explained that, when a statement is not recorded, the proponent of the statement "'[has] to give you the particulars of what it is so you know. But when it's

filmed or written down, you get the particulars when you get the film or the writing.'" *Id.* (brackets in *Edblom*). There, the court ruled, the notice was sufficient because the "'discovery points out exactly what the state is offering.'" *Id.*

On appeal, we reversed. We first noted that the notice was similar to those at issue in *Chase* and *Bradley* in that it

"served only to notify [the] defendant that the state intended to offer all statements by the alleged victim regarding criminal acts [the] defendant committed against her and that the statements were contained in any discovery that had been or would be provided. The notice did not identify any particular statements, nor did it specify the witnesses or the means by which the statements would be introduced."

*Id.* at 30. We then concluded that "[t]he general written notice and discovery [were] not sufficient, alone or together, to provide notice [as to a tape-recorded interview of the victim].[3] As discussed above, discovery does not constitute notice for the purposes of OEC 803(18a)(b)." *Id.* at 31-32 (citation omitted).

Again, the affidavit attached to the notice in this case provided, in part, that the victim was available and expected to testify at trial and that

"[t]he foregoing and subsequent items and documents contain the particulars of statements made by [the victim] that the State intends to offer[:]

"a. Statement(s) made orally and in the form of drawings on November 15th, 2008 while at or immediately outside of the Beaverton YMCA, referenced (among other potential places) on discovery pages[] 4, 5, 11, 12, 16, 17, and 34;

"b. Statement(s) made on November 15th-16th, 2008 at Legacy Emanuel Hospital referenced (among other potential places) in Legacy Emanuel Hospital records previously subpoenaed to court and on discovery page 18;

---

[3] We assumed for the sake of argument that the victim's tape-recorded statements were the only hearsay statements at issue. *Edblom*, 257 Or App at 31.

"c. Statements made on November 18th, 2008 at the CARES Northwest program referenced (among other potential places) on discovery pages 80-91 and on the recorded (DVD) interview previously made available to the defense;

"d. Statement(s) made on November 18th, 2008 to Detective Andler after the November 18th, 2008 CARES interview referenced (among other potential places) on discovery page 5b."

As noted, the trial court ruled that the statements contained within the hospital records and the CARES report (discovery pages 80-91) were not sufficiently noticed. Accordingly, our task on appeal is to consider whether the state's notice was sufficient as to those statements that were (1) contained within the specific discovery pages referenced in paragraphs (a), (b), and (d), and the CARES DVD and (2) later admitted at trial.

As to those statements, we conclude that the state's notice was sufficient under OEC 803(18a)(b)—that is, the state's notice, including the affidavit, in combination with the specific discovery pages and the DVD that it referenced, sufficiently identified the substance of the statements and the witnesses or other means by which the statements would be introduced. The notice in this case stands in stark contrast to those that we considered in both *Chase* and *Edblom*. As noted, in *Chase*, the state notified the defendant that the "particulars" of the statements that it sought to introduce were contained within 53 pages of discovery. 240 Or App at 544. In *Edblom*, the notice provided that the statements were contained "'in substance in *any* law enforcement investigative reports, social service agency reports, school records, and video and audio tapes and other items which *have been and will be* discovered in this case.'" 257 Or App at 24 (emphases added). Neither notice was sufficient because each referred to large amounts of discovery material, effectively requiring the respective defendants to guess as to the relevant statements. Indeed, in *Edblom*, the notice even referred to hypothetical material that had yet to be discovered.

Here, in contrast, the state did not simply reference a large amount of discovery material; rather, as noted, it referenced a small number of documents/items (nine specific discovery pages and the DVD) that each identified a finite

number of statements and witnesses to those statements. Specifically, as to those statements contained within the discovery reports, the state identified in its affidavit (1) the date on which the statements were made, (2) the place at which the statements were made, and (3) the specific discovery pages on which the statements themselves could be found. Each discovery page contained a small number of statements by the victim, and, importantly, the affidavit's references to discovery were to documents that had been discovered at the time of the notice—not, as in *Edblom*, to hypothetical, undiscovered documents. Accordingly, the substance of the statements was readily identifiable. Further, read in context, the specifically referenced pages of discovery identified the particular witnesses to the statements (including the victim himself) who could be available to testify at trial as to the substance of those statements. That is sufficient to identify the witnesses or other means by which the statement would be introduced for purposes of qualifying the evidence for admission under OEC 803(18a)(b).[4]

The same is equally true, if not more so, concerning the statements on the CARES DVD. Again, the state identified in its affidavit (1) the date on which the statements were made, (2) the place at which the statements were made, and (3) the particular item that contained the statements (the DVD). The DVD contained a finite number of statements by the victim, and defendant possessed the DVD and could easily ascertain the substance of the statements. Moreover, the notice and affidavit both explicitly referred to the DVD; under those circumstances, the state properly identified the means by which the statements would be introduced, *i.e.*, introduction of the DVD itself into evidence. Given that "the notice was not required to set forth the statements verbatim," *Chase*, 240 Or App at 546, we fail to see what more the rule requires. Accordingly, the trial court did not err in admitting the victim's hearsay statements.

Turning to defendant's second and third assignments of error, as noted, defendant contends that the court erred in

---

[4] *Chase* does not stand for the proposition that a party is obliged to identify in its notice a *single* means of introducing a statement at trial. Rather, a party must identify the recipient(s) of the statement or other means by which it may be introduced at trial.

admitting his letter to his wife and in requiring that his wife testify because both the letter and his wife's decision not to testify were privileged under OEC 505. We begin with a brief overview of the husband-wife privilege, OEC 505, in order to provide context for the parties' arguments below and on appeal. That privilege is actually comprised of two distinct privileges: the marital communications privilege, OEC 505(2), and the testimonial privilege, OEC 505(3). Under the marital communications privilege,

> "[i]n any civil or criminal action, a spouse has a privilege to refuse to disclose and to prevent the other spouse from disclosing any confidential communication made by one spouse to the other during the marriage. The privilege created by this subsection may be claimed by either spouse. The authority of the spouse to claim the privilege and the claiming of the privilege is presumed in the absence of evidence to the contrary."

OEC 505(2). Under the testimonial privilege,

> "[i]n any criminal proceeding, neither spouse, during the marriage, shall be examined adversely against the other as to any other matter occurring during the marriage unless the spouse called as a witness consents to testify."

OEC 505(3).

As the Supreme Court has explained,

> "[t]he marital privileges are distinguishable from each other in several ways. In particular, the marital communications privilege applies to only confidential communications between the spouses made during the marriage, while the testimonial privilege applies to nonconfidential communications *and* observations made during the marriage. Both spouses hold the marital communications privilege, and both may assert that privilege during, and after, the marriage. By contrast, only the spouse called to testify holds the testimonial privilege, and that privilege may be asserted only during the marriage. Finally, the marital communications privilege may be asserted in civil and criminal cases, but the testimonial privilege may be asserted in criminal cases alone."

*State v. Serrano*, 346 Or 311, 318-19, 210 P3d 892 (2009) (citations omitted).

Those privileges are not absolute. Several statutes limit their reach.[5] Most importantly for our purposes, ORS 419B.040(1) prohibits their use in certain circumstances:

> "In the case of abuse of a child, the privileges created in ORS 40.230 to 40.255, including the psychotherapist-patient privilege, the physician-patient privilege, the privileges extended to nurses, to staff members of schools and to regulated social workers and the husband-wife privilege, shall not be a ground for excluding evidence regarding a child's abuse, or the cause thereof, in any judicial proceeding resulting from a report made pursuant to ORS 419B.010 to 419B.050."[6]

With that context in mind, we state the pertinent procedural facts. Before trial, the state sought a ruling on whether defendant's wife could claim the husband-wife privilege under OEC 505 and thus *refuse to testify* at trial. The state argued that ORS 419B.040(1) abrogated the husband-wife privilege in all child-abuse cases and that defendant's wife was therefore required to testify. Defendant argued, in part, that that statute did not apply because his criminal trial was not a "judicial proceeding resulting from a report made pursuant to ORS 419B.010 to 419B.050."

The court asked the state what it was expecting defendant's wife to testify about at trial, and the state responded that it expected her to testify that defendant had

---

[5] For example, OEC 505(4) provides that "[t]here is no privilege under [OEC 505]":

"(a) In all criminal actions in which one spouse is charged with bigamy or with an offense or attempted offense against the person or property of the other spouse or of a child of either, or with an offense against the person or property of a third person committed in the course of committing or attempting to commit an offense against the other spouse;

"(b) As to matters occurring prior to the marriage; or

"(c) In any civil action where the spouses are adverse parties."

Additionally, ORS 136.655(2) prohibits use of the testimonial privilege in circumstances identical to those described in OEC 505(4)(a).

[6] ORS 419B.010 to 419B.050 pertain generally to reports and investigation of child abuse. *State ex rel SOSCF v. Williams*, 168 Or App 538, 549, 7 P3d 655 (2000), *rev dismissed*, 333 Or 596 (2002); *see also State ex rel Juv. Dept. v. Spencer*, 198 Or App 599, 604, 108 P3d 1189 (2005) (referring to ORS 419B.010 to 419B.050 as "the mandatory child abuse reporting statutes"); *Kahn v. Pony Express Courier Corp.*, 173 Or App 127, 142, 20 P3d 837 (2001) (referring to ORS 419B.010 to 419B.050 as "the child abuse reporting law").

left her a letter prior to fleeing the country in which "[h]e ma[de] incriminating statements that he [could not] spend the rest of his life in prison." The state also explained that it "ha[d] the note in evidence." Additionally, the state expected defendant's wife to testify as to statements that defendant had made to her regarding his interaction with the victim at the YMCA.

The trial court ultimately concluded that ORS 419B.040(1) abrogated the husband-wife privilege in all child-abuse cases and, on that basis, concluded that defendant's wife was "going to be required to testify."

At trial, the state sought to admit the letter into evidence through the testimony of a police officer who had retrieved the letter from defendant's wife. Defense counsel stipulated that defendant had written the letter and stated that he had no objection to its admission. The letter was then offered and received into evidence. Later, defendant's wife complied with the trial court's ruling and took the stand.

As noted, defendant contends that the court erred in ruling that ORS 419B.040(1) abrogated the husband-wife privilege in this case and, on that basis, in admitting the letter and requiring defendant's wife to testify. In defendant's view, ORS 419B.040(1) does not apply in this case because the state failed to show that his criminal trial was a "judicial proceeding resulting from a report made pursuant to ORS 419B.010 to 419B.050." Specifically, he asserts that ORS 419B.010 to 419B.050 are "mandatory reporter statutes" that "impose legal obligations upon 'any public or private official' to report suspected child abuse and outline the procedures for making a report and investigating the report." Here, he asserts, the state failed to establish that his criminal trial resulted from "a report made by a mandatory reporter under the mandatory reporting procedures." Accordingly, defendant argues, the husband-wife privilege precluded the court from admitting the letter and requiring that his wife testify.

The state makes several arguments in response. As a general matter, the state argues that the text, context, and legislative history of ORS 419B.040(1) illustrate the

legislature's intent to create a "very broad exception to evidentiary privileges in cases involving child abuse." More specifically, the state argues that, because ORS 419B.015(1)(a)—which governs the required form and content of a report—applies to "[a] person making a report of child abuse, whether the report is made voluntarily or is required," ORS 419B.040(1) should be construed to abrogate the privilege in cases stemming from reports made by mandatory or *voluntary* reporters. Alternatively, the state argues that it put forth sufficient evidence to show that the victim's mother, a nurse, and a responding police officer were mandatory reporters who each made a "report" sufficient to trigger the application of ORS 419B.040(1). Finally, the state argues that any error in admitting the letter or requiring that defendant's wife testify was harmless.

We conclude, first, that defendant failed to preserve his assignment of error challenging the trial court's admission of the letter. *See State v. Wyatt*, 331 Or 335, 345-47, 15 P3d 22 (2000) (court has an obligation to determine *sua sponte* whether a contention has been preserved for appellate review). Put simply, defendant never objected to the admission of the letter before or at trial; nor did he argue to the court that the letter *itself* contained confidential communications that were protected under the marital communications privilege. In fact, defendant stipulated at trial to the fact that he had written the letter and explicitly told the court that he had *no objection* to its admission. To be sure, defendant argued to the court that ORS 419B.040(1) did not abrogate his wife's testimonial privilege in this case and also notified the court that he was claiming his "testimonial privilege and confidential communication privilege pursuant to the same OEC 505." The problem, however, is that defendant never identified the *letter* as evidence that, in his view, was privileged under OEC 505 and therefore inadmissible. Under those circumstances, defendant cannot argue on appeal that the trial court erred in admitting it.

Second, we conclude that, even assuming that the trial court erred in requiring that defendant's wife testify at trial, that error was harmless. *See* Or Const, Art VII (Amended), § 3 ("If the supreme court shall be of opinion,

after consideration of all the matters thus submitted, that the judgment of the court appealed from was such as should have been rendered in the case, such judgment shall be affirmed, notwithstanding any error committed during the trial[.]"). Defendant's wife testified that she had given the letter to police. Additionally, she testified as follows:

"[PROSECUTOR]: Prior to [June 29th], your husband * * * had told you what happened in the shower room, in the locker room at the YMCA?

"[THE WITNESS]: Excuse me just a second, I need to ask my attorney a question.

"THE COURT: Mr. Rich, can you step up here, please.

"THE WITNESS: Can that be turned off?

"([The witness] confers with counsel)

"[PROSECUTOR]: * * * again, so using the conversation with the detective as a reference point, but—I say June 29th, but whatever date that was, using that as a reference point—

"[THE WITNESS]: Mm-hmm.

"[PROSECUTOR]: —sometime prior to that conversation with the detective did your husband * * * tell you that the boy had been masturbating—

"[DEFENSE COUNSEL]: Objection.

"THE COURT: Sustained.

"[PROSECUTOR]: Did your husband give you an explanation as to what happened in the locker room?

"[THE WITNESS]: No.

"[PROSECUTOR]: He didn't? Okay. No further questions."

Error is harmless where there is "little likelihood that the error affected the jury's verdict." *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). Here, defendant's wife testified that she had given the letter to the police—a fact that the state had already adduced through the testimony of the officer who had retrieved it and one that was of little consequence given defendant's stipulation that he had authored it. Then, when asked whether defendant had given

her "an explanation as to what happened in the locker room," she replied, "No." Put simply, defendant's wife's brief testimony was either cumulative of other evidence or not prejudicial to defendant.

Defendant argues that his wife's testimony was harmful, in part, because "[a] juror could have inferred that, because [she] needed to consult with counsel when asked about what defendant [had] told her, she knew *something* about the allegations." (Emphasis in original.) We disagree. The fact that defendant's wife requested to speak to her attorney prior to answering a question does not suggest that she then gave an untruthful answer. Furthermore, as the state correctly points out, the record does not indicate that the jury saw or heard anything prejudicial to defendant as a result of his wife's meeting with counsel. Under those circumstances, we do not hesitate to conclude that there is "little likelihood that [any] error affected the jury's verdict."

In sum, as to defendant's first assignment of error, we conclude that the state's notice was sufficient under OEC 803(18a)(b) and that, therefore, the trial court did not err in admitting the hearsay statements at issue. As to defendant's second and third assignments of error, we conclude that defendant failed to object to the admission of the letter and that any error in requiring defendant's wife to testify was harmless.

Affirmed.