Argued and submitted May 20, 2013, affirmed October 15, 2014, petition for review denied January 15, 2015 (356 Or 685)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ROBERT DEAN PHILLIPS,
*Defendant-Appellant.*

Lane County Circuit Court
201023393; A148398

337 P3d 190

Kevin T. Lafky argued the cause for appellant. With him on the briefs was Lafky & Lafky.

Leigh A. Salmon, Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

ARMSTRONG, P. J.

**ARMSTRONG, P. J.**

Defendant appeals a judgment of conviction for two counts of first-degree sexual abuse, ORS 163.427, and a number of drug-related offenses, challenging only his convictions for first-degree sexual abuse. Defendant raises seven assignments of error, relating to the trial court's denial of his suppression motion, various evidentiary rulings, and its instruction that the jury could find defendant guilty by a nonunanimous vote. We write to address only defendant's first assignment of error, and we reject his remaining assignments without written discussion. In his first assignment of error, defendant contends that the trial court erred when it allowed the state to introduce hearsay statements contained in a video-recorded interview of the victim, arguing that the state failed to provide him adequate notice of its intent to offer the statements, as required by OEC 803(18a)(b). For the reasons that follow, we affirm.

In 2010, eleven-year-old M disclosed to her mother that her father, defendant, had sexually abused her. M was subsequently examined at Kids' First Center of Lane County, an organization that interviews and counsels child victims of abuse, where she explained that defendant would have her sit naked on his stomach and masturbate him and that the abuse had last occurred when she was six years old. Also during that interview, M indicated that defendant, who fostered developmentally disabled adults at his home, had abused his clients, grew marijuana in a shed on his property, and kept drug paraphernalia and marijuana in various locations at his home.

Detective Humphreys of the Springfield Police Department was present for M's interview, which he observed on a television monitor in another room. Humphreys subsequently arranged to record a telephone call between M and defendant, in which M asked defendant about inappropriate touching and defendant denied any wrongdoing. Several days later, Humphreys, along with two narcotics detectives, went to defendant's home to investigate the allegations. They wore plain clothes and drove unmarked police cars. The officers knocked on defendant's door, and defendant invited them inside.

When asked if he knew why the officers had come to his home, defendant told Humphreys that he had received a call from M in which M asked defendant about inappropriate touching and that he believed that the officers were there to investigate those allegations of abuse. Humphreys explained that they were also investigating allegations that defendant had abused his clients but did not mention the narcotics investigation. Humphreys asked for consent to search the house to verify the safety and living conditions of the clients. Defendant gave consent, and, in the subsequent search, the officers discovered evidence of a marijuana-growing operation, along with marijuana and MDMA.[1]

While the narcotics detectives processed that evidence, Humphreys informed defendant that he was not under arrest and advised him of his *Miranda* rights. Humphreys and defendant discussed defendant's marijuana-growing operation and his personal use of marijuana and MDMA. The conversation then turned to M. Defendant explained that he had found M's recent phone call odd and denied that he had ever touched M inappropriately. However, defendant recounted a time, approximately four years before, that he had been sleeping in the same room as M and had awakened to M sitting on top of him and touching him in a way that made him uncomfortable. Both defendant and M had been naked. Defendant said that he had had a conversation with M at the time to explain that that behavior was inappropriate.

At that point, Humphreys asked defendant if he would be willing to come to the Springfield Police Department later that day to finish their conversation. Defendant agreed, and Humphreys and the other officers left defendant's house. A short time later, after arranging for the care of his clients, defendant drove to the police department, where Humphreys escorted him to an interview room. Humphreys again advised defendant that he was not under arrest and read defendant his *Miranda* rights. Humphreys then conveyed the specifics of M's allegations to defendant. Defendant denied that the abuse had occurred. However, defendant

---

[1] Commonly known as "ecstasy" or "Molly," 3,4-methylenedioxymethamphetamine (MDMA), is a synthetic, psychoactive drug.

reiterated his story about waking up to find M sitting on top of him. When Humphreys asked defendant if M had been touching defendant's penis, defendant acknowledged that it was possible but that he did not remember because he had been sleeping.

Finally, Humphreys asked defendant if he would be willing to take a polygraph examination. At that point, defendant indicated that he would like to speak with an attorney. Humphreys stepped out of the interview room, and defendant called an attorney on his cellular phone. A few minutes later, defendant, still on the phone, left the interview room and asked Humphreys if he was under arrest. When Humphreys said that he was not, defendant explained that he was "terminating [their] conversation" and left the police station. A short time later, Humphreys arrested defendant.

The state charged defendant with two counts of first-degree sexual abuse, ORS 163.427; one count of criminal mistreatment, ORS 163.205; and a number of drug-related charges.[2] In November 2010, the state provided notice to defendant that it intended to offer hearsay statements under OEC 803(18a)(b).[3] That notice provided, in full:

"Pursuant to [OEC 803](18a)(b), notice is hereby given that the State intends to offer hearsay statements of the

---

[2] The state ultimately moved to dismiss the criminal-mistreatment charge, and defendant pleaded guilty to the drug-related offenses after unsuccessfully moving to sever them from the remaining charges. A jury convicted defendant of both counts of first-degree sexual abuse. As noted, defendant challenges only those convictions on appeal, and, to the extent appropriate, we limit our discussion to address only those convictions.

[3] OEC 803(18a)(b) creates an exception for statements made by a child victim of sexual abuse from the general rule prohibiting the admission of hearsay statements, OEC 802. OEC 803 provides, as relevant:

"The following are not excluded by [OEC 802], even though the declarant is available as a witness:

"* * * * *

"[(18a)](b) A statement made by a person concerning an act of [sexual] abuse * * * is not excluded by [OEC 802] if the declarant either testifies at the proceeding and is subject to cross-examination, or is unavailable as a witness but was chronologically or mentally under 12 years of age when the statement was made * * *. * * * No statement may be admitted under this paragraph unless the proponent of the statement makes known to the adverse party the proponent's intention to offer the statement and the particulars of the statement no later than 15 days before trial, except for good cause shown."

victim regarding the nature of the criminal acts committed by the defendant upon the victim. Said statements are contained in substance in the law enforcement investigative reports, social service agency reports, school records, and video and audio recordings made by the Kid[s'] First Center and other items which have been and will be discovered in this case.

"The State intends to offer all of the victim statements regarding the defendant's criminal acts."

Three months later, in February 2011, we decided *State v. Chase*, 240 Or App 541, 546-47, 248 P3d 432 (2011), in which we held that OEC 803(18a)(b) "requires at a minimum that the state identify in its notice the substance of the statement sought to be introduced and also identify the witness or the means by which the statement would be introduced." In doing so, we concluded that the state's cursory notice in *Chase—viz.*, that "'the foregoing and subsequent reports contain particulars of statements made by [the victim] that the State intends to offer'"—failed to meet the notice requirement of OEC 803(18a)(b). *Id.* at 544, 547.

Approximately one week after we decided *Chase*, and one month before defendant's trial was to take place, the state provided a second notice to defendant that it intended to offer hearsay statements under OEC 803(18a)(b). In that second notice, the state reproduced the first notice in its entirety, but appended specifics in an apparent attempt to comply with our holding in *Chase*:

"The State intends to offer all of the victim statements concerning the defendant's criminal acts. Specifically, the State intends to offer the following:

"1. The complete statement made by [M] to [the interviewer] at the Kid[s'] First Center on or about October 14, 2010 as captured in the discovered DVD and previously discovered."[4]

---

[4] The state also indicated that it intended to offer "[t]he complete statement made by [M] to [M's mother] as captured in the police reports written by Ethan Spencer and in [M's mother's] hand written notes." However, the state did not offer that statement at trial. Accordingly, we confine our analysis to whether the state's notice complied with the requirements of OEC 803(18a)(b) as to the video recording of M at Kids' First.

At the onset of trial, defendant moved *in limine* to exclude any hearsay statements of M regarding the abuse. Relying on *Chase*, defendant argued that the state's hearsay notice was insufficient to satisfy the notice requirement of OEC 803(18a)(b) because it failed to identify both the substance of the statements that the state intended to introduce and because it failed to identify the witness or means by which the state intended to introduce the statements. In response, the state acknowledged its burden under OEC 803(18a)(b) but argued that the second notice complied with that requirement. As to the substance of the statements, the state noted that OEC 803(18a)(b) does not require the statements to be set out verbatim and argued that it had adequately complied with the notice requirement by identifying who made each statement, to whom they were made, and where the statements could be found in the discovery materials. As to the witness or means of introduction, the state argued that its identification of the Kids' First DVD conveyed the means by which it would introduce the statements, because the state intended to introduce the statements "as captured in the discovered DVD"—that is, by introducing the DVD into evidence.

The trial court denied defendant's motion. Noting that our decision in *Chase* did not provide much guidance as to what the state's notice must convey, the court concluded that the notice adequately conveyed the specifics of the statements that the state intended to introduce and the means by which the state would introduce them. During its case in chief, the state offered the DVD recording of M's interview at Kids' First, which was played for the jury over defendant's renewed objection.

On appeal, defendant reprises the argument that he made to the trial court. First noting that the state's initial notice of its intent to offer hearsay under OEC 803(18a)(b) suffered the same deficiencies as the notice given in *Chase*, defendant contends, without elaboration, that the "second notice failed [to comply with the notice requirement] because it still lacked the 'particulars of the statement' that [the state intended to] introduce." The state argues, in turn, that, by informing defendant that it intended to use the full

recorded interview, it notified the defense of the substance of the statement.

We review a trial court's determination that the state's notice complied with OEC 803(18a)(b) for legal error. *Chase*, 240 Or App at 546. As noted, to comply with that rule, the notice must identify "the substance of the statement sought to be introduced and also identify the witness or the means by which the statement would be introduced." *Id.* at 547. The notice need not set out verbatim the statements that the state intends to offer, *id.* at 546, but merely providing "general written notice and discovery [is] not sufficient, alone or together, to provide notice." *State v. Edblom*, 257 Or App 22, 31, 303 P3d 1001 (2013); *see also State v. Bradley*, 253 Or App 277, 283, 290 P3d 827 (2012) ("The notice requirement is not satisfied merely by providing copies of reports and stating * * * that they 'contain the particulars of statements made by [the declarant] that the state intends to offer.'").

Since deciding *Chase*, we have had several opportunities to explain what, as a practical matter, that standard requires of the state. Most recently, in *State v. Ashkins*, 263 Or App 208, 215-16, 327 P3d 1191 (2014), we concluded that the state's notice was sufficient when "the notice provided the date of the statements, and included to whom and by whom they were made, with specific enough detail regarding the statements' location in the [previously provided discovery materials] to allow defendant to discern their substance."

We reached the same conclusion in *State v. Riley*, 258 Or App 246, 308 P3d 1080, *rev den*, 354 Or 597 (2013). There, an affidavit attached to the state's notice identified "(1) the date on which the statements were made, (2) the place at which the statements were made, and (3) the specific discovery pages on which the statements themselves could be found." *Id.* at 255-56. We concluded that, because "[e]ach discovery page contained a small number of statements by the victim," the "substance of the statements was readily identifiable." *Id.* at 256. As to the witness or means of introduction, we concluded that "read in context, the specifically referenced pages of discovery identified the particular witnesses to the statements (including the victim himself) who

could be available to testify at trial as to the substance of those statements." *Id.* In reaching that conclusion, we noted that "*Chase* does not stand for the proposition that a party is obligated to identify in its notice a *single* means of introducing a statement at trial. Rather a party must identify the recipient(s) of the statement or other means by which it may be introduced at trial." *Id.* at 256 n 4 (emphasis in original).

*Riley* also provided us with an opportunity to examine, specifically, whether the state's notice was sufficient as to a video-recorded interview of the child victim of sexual abuse. There, the state's notice had provided

"that the relevant statements were contained within (1) '[a]ll previously provided discovery in this case'; (2) '[a]ll documents received by the parties pursuant to court authorized pre-trial subpoenas'; and (3) '[t]he video recording of the CARES [Northwest] interview.'"[5]

*Id.* at 249. The notice also referred to an attached affidavit that, like the state's second notice in this case, sought to identify the particulars of the statements that the state intended to offer:

"Statements made on November 18th, 2008[,] at the CARES Northwest program referenced (among other potential places) on discovery pages 80-91 and on the recorded (DVD) interview previously made available to the defense."

*Id.* The defendant moved to exclude the victim's hearsay statements, contending that the state's notice did not comply with the requirements of OEC 803(18a)(b), and the trial court denied his motion. The defendant appealed, and we affirmed.

In doing so, we again emphasized that the state's notice had provided (1) the date on which the statements were made, (2) the place at which the statements were made, and (3) where the particular statements could be found in previously provided discovery materials—*viz.*, "the particular item that contained the statements (the DVD)." *Id.* at 256. Accordingly, we concluded that

---

[5] Like Kids' First, CARES Northwest is an organization that conducts forensic examinations of child victims of abuse.

"[t]he DVD contained a finite number of statements by the victim, and [the] defendant possessed the DVD and could easily ascertain the substance of the statements. Moreover, the notice and affidavit both explicitly referred to the DVD; under those circumstances, the state properly identified the means by which the statements would be introduced, *i.e.*, introduction of the DVD itself into evidence. Given that 'the notice was not required to set forth the statements verbatim,' *Chase*, 240 Or App at 546, we fail to see what more the rule requires. Accordingly, the trial court did not err in admitting the victim's hearsay statements."

*Id.*

That reasoning applies with equal force here. Again, in its second notice to defendant, the state indicated that it intended to offer

"[t]he complete statement made by [M] to [the interviewer] at the Kid[s'] First Center on or about October 14, 2010 as captured in the discovered DVD and previously discovered."

That notice provided defendant with the date on which the statements were made, the place at which the statements were made, and where the particular statements could be found in the previously provided discovery. The statements were contained on a single DVD encompassing a single interview with M, and the notice indicated that the entire interview would be introduced at trial. Moreover, the notice indicated that the statements would be offered "as captured in the discovered DVD," indicating that the state intended to introduce the statements through the recording itself. All told, the notice did not require defendant to guess what statements would be introduced, nor how. As in *Riley*, we fail to see what more the rule requires.

Thus, we conclude that the state's notice adequately set forth the particulars of the statements, as required by OEC 803(18a)(b). It follows that the trial court did not err in admitting M's hearsay statements.

Affirmed.