Argued and submitted December 7, 2022, counts 1 through 7, 10, 12, 15, 16, and 19 through 21 reversed and remanded; otherwise affirmed September 27, 2023

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

CLAUDE LEONARD JOSEPH III,
*Defendant-Appellant.*

Marion County Circuit Court
18CR52707; A174920

537 P3d 584

Defendant appeals convictions for numerous crimes, including sex crimes and animal abuse crimes. Defendant argues that the trial court erred by determining that a discovery letter, when considered in context, was sufficient to provide timely notice of the state's intention to rely on child hearsay statements under OEC 803(18a)(b). *Held*: The trial court erred by admitting the evidence because the discovery letter, when considered in context, did not make known "the particulars" of how the state planned to introduce and rely on the child hearsay statements. *State v. Chase*, 240 Or App 541, 248 P3d 432 (2011) set forth the minimum requirements for an OEC 803(18a)(b) notice, and the discovery letter did not satisfy those requirements. The error was not harmless.

Counts 1 through 7, 10, 12, 15, 16, and 19 through 21 reversed and remanded; otherwise affirmed.

J. Channing Bennett, Judge.

Ernest G. Lannet, Chief Defender, argued the cause for appellant. Also on the briefs was Mary Reese, Deputy Public Defender, Criminal Appellate Section, Office of Public Defense Services.

Jennifer S. Lloyd, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Shorr, Presiding Judge, and Mooney, Judge, and Pagán, Judge.

PAGÁN, J.

Counts 1 through 7, 10, 12, 15, 16, and 19 through 21 reversed and remanded; otherwise affirmed.

Mooney, J., concurring in part, dissenting in part.

**PAGÁN, J.**

Can a discovery letter identifying potential witnesses and physical evidence, which was never intended to make known "the particulars" of how the prosecutor planned to introduce and rely on child hearsay statements during a jury trial, be construed as satisfying the requirements of OEC 803(18a)(b) when considered in context?[1] The answer is no. Relying on the fact that the interviews of two children had been "central" to the case from the beginning, the trial court determined that the discovery letter, when considered in the context of other information generally provided to defendant, provided sufficient notice under OEC 803(18a)(b). But defendant's presumed awareness of the state's intention to rely on the interviews did not relieve the state of its express statutory obligation to provide timely notice of the state's intention "to offer the statement and the particulars of the statement." OEC 803(18a)(b). In *State v. Chase*, 240 Or App 541, 248 P3d 432 (2011), we set forth the minimum requirements for an OEC 803(18a)(b) notice, and the discovery letter here, even considered in context, did not convey that information. Because the discovery letter was too general to satisfy that obligation, the trial court erred by admitting the hearsay statements, and the error was not harmless. We therefore reverse and remand defendant's convictions.

## FACTS

The relevant facts are largely procedural. Defendant was charged with numerous sex crimes involving his girlfriend's children, A and M, and he was also charged with crimes against his girlfriend, two other children, and family pets. A was nine years old at the time of trial and M was seven years old. A and M were referred to Liberty House,

---

[1] OEC 803(18a)(b) provides, in part, that:

"A statement made by a person concerning an act of abuse as defined in ORS 107.705 or 419B.005, *** is not excluded by ORS 40.455 if the declarant either testifies at the proceeding and is subject to cross-examination, or is unavailable as a witness but was chronologically or mentally under 12 years of age when the statement was made ***. No statement may be admitted under this paragraph unless the proponent of the statement makes known to the adverse party the proponent's intention to offer the statement and the particulars of the statement no later than 15 days before trial, except for good cause shown."

a child abuse assessment center, for interviews regarding possible sexual abuse. The Liberty House interviews of A and M were video recorded.

In December 2018, defendant filed a pretrial motion to exclude evidence of other bad acts, including statements made by A and M during their Liberty House interviews that concerned defendant's mistreatment of family pets and physical abuse of the two other children.[2] The trial court granted in part and denied in part the motion to exclude evidence of other bad acts.[3]

Defendant's trial date was set for February 12, 2019. On January 10, 2019, the prosecutor sent defendant a discovery letter, pursuant to ORS 135.815(1),[4] that outlined potential witnesses and physical evidence that the state might offer at trial. The relevant part of the letter stated:

"The State may offer the following physical evidence at trial:

"Recorded interview of defendant

"Liberty House interview of [M]

"Liberty House interview of [A.]"

On January 31, 2019, the state filed two, far more detailed, notices for certain statements made by A and M to a child interviewer and medical examiner at Liberty House. Each one was called, "Notice of Intent to Rely on Hearsay Evidence pursuant to OEC 803(18a)(b)." The notices indicated that the state intended to rely on statements made by A and M to

---

[2] In preparing the motion to exclude evidence of prior bad acts, defense counsel appears to have relied on either a transcript of the Liberty House interviews, or reports prepared by Liberty House. At the later hearing on the state's motion to continue the trial and defendant's motion to exclude evidence of child hearsay, defense counsel stated that she did not obtain the video recordings of the Liberty House interviews until two days prior to the hearing. At the same time, defendant was opposed to the state's request to continue the trial, which was scheduled to begin on February 12.

[3] The court's ruling on the admissibility of that evidence was limited to questions of relevancy under OEC 401, other acts evidence under OEC 404(3), and whether the evidence should be excluded under OEC 403.

[4] ORS 135.815 addresses required disclosures that the prosecutor must make to a represented defendant.

"a child interviewer at Liberty House. A copy of the child victim's statements is included on pages 9-12 of a 14 page report, which was written by [the child interviewer and a medical examiner.] The victim is referred to by name in the report. The victim's statements made to [the interviewer] were also video recorded. \*\*\* Her statements include a description of the acts of abuse that occurred, as well as the location of where the abuse occurred."

The notices also indicated that the state intended to rely on statements made by A and M to

"a medical examiner at Liberty House. A copy of the child victim's statements is included on pages 12-13 of a 14 page report, which was written by [the child interviewer and the medical examiner.] Her statements include a description of the acts of abuse that occurred."

On February 1, 2019, the state moved to continue the trial to a later date and included an affidavit acknowledging that the hearsay notices were not timely filed, given the statute's requirement of notice "15 days before trial." Defendant objected to delaying the trial, and he filed a motion *in limine* to exclude the hearsay statements for lack of required notice under OEC 803(18a)(b).

A hearing was held on February 7, 2019. Having acknowledged that the hearsay notices filed on January 31, 2019, were untimely, the state decided to rely on the "trial letter dated January 10th as the notice" for OEC 803(18a)(b) purposes. Although the hearsay notices addressed evidence that went beyond the scope of the statements made by A and M in the Liberty House interviews, the state did not pursue admission of hearsay statements other than those recorded during the interviews. The state argued that the January 10 discovery letter was sufficient to serve as notice of the state's intent to offer those statements at trial.

After argument from both sides, the trial court ruled that the hearsay statements from the Liberty House interviews were admissible. The trial court noted that the January 10 discovery letter "standing alone" was not sufficient, but that because the "central heart of the case" was the Liberty House report, "there has been lots of notice of the intent to use" the Liberty House interviews. In its written

notes from the hearing, the trial court stated that notice was sufficient "under the combined efforts" and the "totality of these circumstances."

After the state rested, the trial court granted the state's motion to dismiss Count 11, and it granted defendant's motion for a judgment of acquittal on Counts 8, 9, 13, 14, 17, and 18. The court also granted the motion as to Count 20, but it found that there was sufficient evidence of the lesser-included offense of attempted second-degree animal abuse for trial to proceed on that offense. The jury found defendant guilty of five counts by nonunanimous verdicts. The jury found defendant guilty of nine counts by unanimous verdicts, including two counts of first-degree sodomy against A (Counts 1 and 2), three counts of first-degree sexual abuse against A (Counts 3, 4, and 5), one count of luring a minor (Count 6), and one count of first-degree sexual abuse against M (Count 10). In addition, the jury found defendant guilty by unanimous verdict of second-degree animal abuse (Count 19) and attempted second-degree animal abuse (Count 20). The trial court sentenced defendant to 25 years in prison. Defendant appeals.

## ANALYSIS

Preliminarily, we address defendant's convictions that were based on nonunanimous verdicts. For the reasons expressed in *Ramos v. Louisiana*, 590 US ___, 140 S Ct 1390, 206 L Ed 2d 583 (2020), and *State v. Ulery*, 366 Or 500, 464 P3d 1123 (2020), those convictions must be reversed and remanded. The specific counts that must be reversed because of nonunanimous jury verdicts are Count 7 (strangulation), Count 12 (strangulation), Count 15 (first-degree criminal mistreatment), Count 16 (fourth-degree assault), and Count 21 (strangulation constituting domestic violence).

Turning to defendant's other assignments of error, we review the trial court's determination that the Liberty House statements were admissible under OEC 803(18a)(b) for legal error. *State v. Juarez-Hernandez*, 316 Or App 741, 744, 503 P3d 487, *rev den*, 369 Or 856 (2022). Hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the

truth of the matter asserted." OEC 801(3). Hearsay is generally not admissible. OEC 802. However, OEC 803(18a)(b) makes an exception that permits, among other things, admission of hearsay statements concerning complaints of sexual misconduct or abuse. The issue raised on appeal concerns the notice requirement in the statute:

> "No statement may be admitted under this paragraph unless the proponent of the statement makes known to the adverse party the proponent's intention to offer the statement and the particulars of the statement no later than 15 days before trial, except for good cause shown."

OEC 803(18a)(b).

It is uncontested that the state's January 31 notice was not timely relative to the scheduled trial date of February 12. Thus, we must determine whether the January 10 discovery letter made known the state's "intention to offer the statement and the particulars of the statement." In determining whether that letter was sufficient, we are guided by our decisions in *Chase*, 240 Or App at 546-47, *State v. Riley*, 258 Or App 246, 256, 308 P3d 1080, *rev den*, 354 Or 597 (2013), and *State v. Phillips*, 266 Or App 240, 248, 337 P3d 190 (2014).

In *Chase*, 240 Or App at 546, we emphasized that "OEC 803(18a)(b) requires that the state give notice of the *particulars* of the statements." (Emphasis in original.) We set out to establish the floor, or minimum requirements, for that notice: "the rule's requirement that the proponent identify the particulars of the statement requires at a minimum that the state identify in its notice the substance of the statement sought to be introduced and also identify the witness or the means by which the statement would be introduced." *Id.* at 546-47. In *Chase*, the state provided the defendant with "approximately 53 pages of discovery, including the transcript of the CARES interview of the victim and statements made by the victim to [others]." *Id.* at 544. The state notified the defendant of its intent to rely on those "reports," but we concluded that the notice was insufficient. As we explained,

> "[t]here were multiple hearsay statements in the 53 pages of discovery. It was not sufficient for the state to notify defendant of its intention to potentially offer any of those

statements. Although * * * the notice was not required to set forth the statements verbatim, simply providing discovery and notice of an intention to offer at trial hearsay statements contained in discovery is not sufficient."

*Id.* at 546.

By contrast, in *Riley* and *Phillips*, we concluded that the notices were sufficient. In *Riley*, 258 Or App at 249, the state notified the defendant of its intent to offer statements from the "'video recording of the CARES interview.'" The notice also consisted of an attached affidavit, which provided that the state intended to offer "[s]tatements made on November 18th, 2008 at CARES Northwest program referenced (among other potential places) on discovery pages 80-91 and on the recorded (DVD) interview previously made available to the defense." *Id.* at 249. We explained that

> "the state identified in its affidavit (1) the date on which the statements were made, (2) the place at which the statements were made, and (3) the particular item that contained the statements (the DVD). The DVD contained a finite number of statements by the victim, and defendant possessed the DVD and could easily ascertain the substance of the statements. Moreover, the notice and affidavit both explicitly referred to the DVD; under those circumstances, the state properly identified the means by which the statements would be introduced, *i.e.*, introduction of the DVD itself into evidence."

*Id.* at 256.

We reached a similar conclusion in *Phillips*, 266 Or App at 248. In that case, in its second notice to the defendant, the state indicated that it intended to offer "'[t]he complete statement made by [the victim] to [the interviewer] at the Kid[s'] First Center on or about October 14, 2010 as captured in the discovered DVD and previously discovered.'" *Id.* at 244. As we explained,

> "That notice provided defendant with the date on which the statements were made, the place at which the statements were made, and where the particular statements could be found in the previously provided discovery. The statements were contained on a single DVD encompassing a single interview with M, and the notice indicated that the entire

interview would be introduced at trial. Moreover, the notice indicated that the statements would be offered 'as captured in the discovered DVD,' indicating that the state intended to introduce the statements through the recording itself. All told, the notice did not require defendant to guess what statements would be introduced, nor how."

*Id.* at 248.

Considered in light of our reasoning in *Chase*, *Riley*, and *Phillips*, we conclude that the trial court erred when it ruled that the January 10 discovery letter, which was never intended to satisfy the requirements of OEC 803(18a)(b), was nevertheless sufficient to do so when considered in context. First of all, the January 10 letter, which was provided to defense counsel pursuant to the state's discovery obligations, does not satisfy the minimum requirements set out in *Chase*. By generally indicating that the state "may" offer "physical evidence," including the "Liberty House interview[s]" of two children, that letter failed to identify "the substance of the statement sought to be introduced and * * * the witness or the means by which the statement would be introduced." *Chase*, 240 Or App at 546-47. Unlike the far more detailed notices in *Riley* and *Phillips*, the January 10 discovery letter does not mention DVDs, or the state's intention to play the recorded interviews to the jury, or what parts of the interviews it intended to play. *Cf. Riley*, 258 Or App at 256 ("[T]he notice and affidavit both explicitly referred to the DVD[.]"); *Phillips*, 266 Or App at 248 ("[T]he notice indicated that the entire interview would be introduced at trial. Moreover, the notice indicated that the statements would be offered 'as captured in the discovered DVD,' indicating that the state intended to introduce the statements through the recording itself."). Of course, with the benefit of hindsight, the January 10 discovery letter may appear sufficiently particular. But the letter itself identified no substantive statements, no dates, no names of particular witnesses, or any other limiting information that would provide the defense with what we could reasonably call the "particulars" of what the state intended to offer at trial. We recognize that the facts of this case are at least close to, albeit distinguishable from, those in *Riley* and *Phillips*. Those cases may represent the outer edge of what we consider to be an

offer of a "statement and the particulars of the statement" under OEC 803(18a)(b). However, if we were to extend that case law to the circumstances presented here, the proponents of the hearsay statement could simply point to prior required discovery disclosures and exchanges, which were never intended as notices under OEC 803(18a)(b), to satisfy the rule. Such an expansive reading would undermine the purpose of the rule, which is to provide notice of particular hearsay statements in advance of trial.

At the hearing, the trial court acknowledged that "standing alone" the letter did not satisfy the requirements of OEC 803(18a)(b). However, according to the trial court, when the January 10 discovery letter was considered in context, it was sufficient to provide notice under OEC 803(18a)(b), because "[t]he central heart of this case has been the Liberty report, we've had a motion to suppress, we fleshed out a number of issues, there has been lots of notice of the intent to use this[.]"[5]

We are not persuaded that defense counsel's prior awareness of the interviews carries the day, or that the trial court can cure a defective notice under OEC 803(18a)(b) by pointing to the totality of the circumstances. On appeal, relying on a reference to the two "Lib House videos" in the notes from an earlier status hearing, as well as defendant's motion to exclude evidence of prior bad acts, the state argues that "defense counsel was well-aware that the state intended to offer the statements of the children that were recorded at Liberty House." However, we have rejected similar arguments in the past.

In *State v. Hernandez-Fabian*, 264 Or App 26, 29, 330 P3d 675 (2014), the state's OEC 803(18a)(b) notice was untimely, and the state sought to rely instead on discovery "cover sheets" provided earlier in the case. In arguing that those cover sheets provided sufficient notice, the state emphasized that "defendant was, in fact, aware of the statements that he seeks to exclude." *Id.* at 30. We rejected that argument.

---

[5] When the trial court referred to a motion to suppress, it appears to have had in mind the motion to exclude evidence of prior bad acts.

"Leaving aside the issue of the statements' particulars, the state's notice did not identify, for example, whether S's statements would be offered through the video recording of her CARES interview, through the testimony of the CARES staff member who had conducted the interview, or through the testimony of law enforcement officers who had observed the interview while it was being conducted. That defendant was, ultimately, aware of the statements and their substance does not compensate for the state's failure to comply with the notice requirements in OEC 803(18a)(b)."

*Id.* The same reasoning applies here regarding the state's attempt to rely on the January 10 discovery letter to satisfy its obligations under OEC 803(18a)(b).

Similarly, in *State v. Leahy*, 190 Or App 147, 149, 78 P3d 132 (2003), the state failed to provide timely notice of its intent to rely on the victim's hearsay statements. Based on a list of witnesses furnished by the state earlier in the case, the trial court ruled that the defendant had "'implicit knowledge'" of the fact that the state intended to offer evidence under OEC 803(18a)(b). *Id.* at 150. We rejected that argument too, noting that "merely providing discovery of the statements does not comply with the literal requirements of the rule." *Id.* at 150-51. As we stated in *State v. McKinzie*, 186 Or App 384, 393, 63 P3d 1214, *rev den*, 336 Or 16 (2003), "[w]hether defense counsel *believed* that the prosecutor intended to offer the evidence at trial misses the point of the statute. The statute makes no exception for the requirement of timely notice based on defense counsel's state of mind[.]" (Emphasis in original.)

In other words, whether or not defense counsel was generally aware of the Liberty House interviews, that awareness cannot cure the state's failure to provide timely notice of the substance of the statement and its "particulars," including, for example, information regarding how the state intended to offer the hearsay statements into evidence at trial. In hindsight, it may seem obvious that the state intended to play the video recordings to the jury, but defense counsel could not have known that from the January 10 discovery letter, even coupled with prior awareness of the interviews.

Accepting the state's argument that such context or presumed knowledge is sufficient would create a generalized exception that swallows the particular rule. If the state could metaphorically wave its hand towards its voluminous discovery and suggest that it "may" offer statements hidden within the documents and videos, the purpose of using the word "particulars" in the statute would be wholly defeated. *See State v. Iverson*, 185 Or App 9, 14, 57 P3d 953 (2002), *rev den*, 335 Or 655 (2003) (One purpose of timely notice under the rule is "to enable a party to know about the other party's proposed hearsay evidence long enough before trial to be able to prepare to respond to it. That response could include developing other evidence or, if the declarants will testify, preparing to cross-examine them."); *see also State v. Edblom*, 257 Or App 22, 32, 303 P3d 1001 (2013) ("[D]iscovery does not constitute notice for the purposes of OEC 803(18a)(b).").

In its memorandum filed in the trial court, the state had argued that "[t]he two DVDs were made available to defense counsel in August 2018." At the hearing, defense counsel explained that, although she had written reports from earlier, she did not obtain the video of the Liberty House interviews until two days prior to the hearing. Noting that "a picture's *** worth a thousand words," the trial court indicated that it was willing to continue the trial date if defendant needed additional time to review the videos. But defendant, who faced multiple charges, was opposed to a continuance of the trial date. The court therefore declined to continue the trial date and deemed the January 10 discovery letter sufficient, when considered in context, to satisfy the state's obligation under OEC 803(18a)(b).[6] In so ruling, the trial court erred.

Notwithstanding the error, we must affirm if there is little likelihood that the error affected the verdict. *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). The question is not whether the lack of particularity in the January 10 discovery letter prejudiced defendant; rather, the question is whether defendant was prejudiced by admission of the

---

[6] The state does not argue on appeal that defendant invited the error by objecting to a continuance of the trial date.

hearsay statements from the Liberty House interviews. *Chase*, 240 Or App at 547.

We readily conclude that admission of the hearsay statements was not harmless. The evidence was not merely cumulative of other evidence offered. At trial, M testified briefly about a range of topics including sex abuse, physical abuse of M and her siblings, and animal abuse, and that testimony was not always consistent with what she said during the Liberty House interview. For instance, M testified at trial that defendant made M touch defendant's penis "once." In the Liberty House interview, M disclosed that she touched defendant's penis more than one time. Although A's Liberty House interview and trial testimony were generally consistent, the Liberty House interview described defendant's conduct in more graphic detail. Likewise, the Liberty House interviews included significant graphic detail regarding the animal abuse charges. We cannot say that there is little likelihood that the erroneous admission of the hearsay statements affected the verdict. *See State v. Wood*, 253 Or App 97, 101, 289 P3d 348 (2012) ("In the absence of overwhelming evidence of guilt, *** where *** erroneously admitted hearsay evidence significantly reinforces the declarant's testimony at trial, the admission of those statements constitutes error requiring reversal of the defendant's conviction[.]"). We therefore reverse defendant's convictions.

Counts 1 through 7, 10, 12, 15, 16, and 19 through 21 reversed and remanded; otherwise affirmed.

**MOONEY, J.,** concurring in part, dissenting in part.

I agree that it was error for the trial court to have entered convictions on Counts 7, 12, and 21 (strangulation), Count 15 (first-degree criminal mistreatment), and Count 16 (felony fourth-degree assault) because those convictions were based on nonunanimous jury verdicts. I therefore join the majority in accepting the state's concession, and I agree that reversal of those convictions is the appropriate disposition. *Ramos v. Louisiana*, 590 US ___, 140 S Ct 1390, 1395, 206 L Ed 2d 583 (2020); *State v. Ulery*, 366 Or 500, 503, 464 P3d 1123 (2020).

I write separately because I would address the question of sufficient notice under OEC 803(18a)(b) differently than the majority. The prosecutor's January 10, 2019, letter notified defense counsel that the state intended to offer the "Liberty House interview of [M]" and the "Liberty House interview of [A]" as evidence at trial. We evaluate the sufficiency of that letter under OEC 803(18a)(b) in the context in which it was written and conveyed. To meet the minimum notice requirements of OEC 803(18a)(b), the state must have placed defendant in a position where he did not have to "guess what statements would be introduced, [or] how." *State v. Phillips*, 266 Or App 240, 248, 337 P3d 190 (2014).

This case was formally commenced on August 8, 2018, when defendant was arraigned on the charging instrument. He was assigned legal counsel at that time. One month later, the trial court held a status hearing that resulted in the creation of a status sheet and the filing of a scheduling order. The status sheet is a preprinted form that was filled in by hand. It includes information germane to setting the trial date and estimating the number of days that would be needed to complete the trial. In particular, the status sheet reflects that defendant expected to call three to four witnesses and that the state intended to call six witnesses "w/2 Lib House Videos." The importance of the status sheet is simply that it reflects that the court and counsel discussed the state's intention to offer the Liberty House DVDs at the first status conference, within one month of arraignment. Ten weeks later, another status hearing was held. The status sheet reflects that a motion hearing date was set for January 30, 2019. The notes section of the status sheet indicates that defendant needed "more time to file [motions]; interesting issues," and it set up a briefing schedule.

Three weeks later, defendant filed a motion *in limine* seeking to exclude evidence of "other bad acts." That motion clearly describes, and quotes, things that A and M "told the Liberty House interviewer" and leaves no doubt that defense counsel was aware of the content of those interviews. It is clear that defense counsel had reviewed and analyzed the interviews from an evidentiary point of view.

Indeed, the motion *in limine* carefully identified information provided by A and M in their Liberty House interviews, and then sought to exclude evidence associated with the topics so identified. The hearing on defendant's motion *in limine* occurred after the January 10, 2019, letter was sent by the state, but there can be no question that the Liberty House interviews were the topic of ongoing discussion over the course of the several months leading up to trial. Given that ongoing dialogue, the January 10 letter advising defense counsel that the state intended to offer the "Liberty House interview of [M]" and the "Liberty House interview of [A]" as evidence at trial could not have come as a surprise.

When the prosecutor sent the January 10 letter to counsel notifying her that the state intended to offer the two Liberty House DVDs into evidence, it was against the working backdrop of the case including the status conferences, motions, and interactions between counsel that had already occurred as they moved through the pretrial phase of the case. This record leaves no doubt that defense counsel was aware of the interviews and the DVDs and that she was familiar with them as well. She knew the interviews had been conducted at Liberty House, and she knew what was said. They had already litigated defendant's relevance objections to portions of the interviews. It is in that context that the letter was received and should be evaluated for its sufficiency under OEC 803(18a)(b).

Notice under OEC 803(18a)(b) is sufficient if it provides the date of the statements, the person who made the statements, and the person to whom the statements were made, with enough information about where the statements were made "to allow defendant to discern their substance." *State v. Ashkins*, 263 Or App 208, 216, 327 P3d 1191 (2014), *aff'd*, 357 Or 642, 357 P3d 490 (2015). This case is not like *State v. Chase*, 240 Or App 541, 547-48, 248 P3d 432 (2011), where the state's notice amounted to no more than declaring that the particular statements that it sought to introduce were contained somewhere within the 53 pages of discovery that it had provided to defense counsel. Here, the state said that it intended to offer the DVDs of the two interviews. Defense counsel knew where and when those interviews had

been conducted and the parties to the interviews, and she was aware of the content of the interviews because she had already argued about the relevance of some of it.

This case is like *Phillips*, where we held that the state's notice that it would introduce a single DVD encompassing a single interview, and that it would introduce the entire interview, was sufficient under OEC 803(18a)(b). 266 Or App at 248. I cannot reconcile the majority's assertion that "defense counsel could not have known" that the state intended to play the DVDs for the jury with the fact that there would be no point in offering the DVDs unless the state intended to play them for the jury. 328 Or App at 372. Defendant was not put in the position of having to guess about that at all. Indeed, they had been litigating the admissibility of various statements made in the interviews for months. Under *Phillips*, the state's notice was sufficient.

The majority characterizes *Phillips* as representing "the outer edge" of what the state must include in its OEC 803(18a)(b) notice in terms of "the particulars of the statement" to be offered. *Id.* at 370-71. I do not disagree. But this case does not wander beyond the contours of that outer edge. I do not share the majority's worries about a future where "the state could metaphorically wave its hand towards its voluminous discovery" and comply with its OEC 803(18a)(b) notice obligations by simply saying that it might offer "statements hidden within" those volumes of discovery. *Id.* at 373. This case does not concern anything of the sort. There is no large volume of discovery, no waving hand, and no hidden documents or DVDs.

I would affirm the convictions on Counts 1, 2, 3, 4, 5, 6, 10, 19, and 20.